# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MICHAEL COLLINS,                )
                                )
    Plaintiff,                  )
                                )
v.                              ) CIVIL ACTION 17-0093-WS-N
                                )
NATIONWIDE MUTUAL INSURANCE     )
COMPANY,                        )
                                )
    Defendant.                  )

## ORDER

This matter is before the Court on the defendant's motion to dismiss. (Doc. 2). The plaintiff has filed a response and the defendant a reply, (Docs. 9, 10), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1-1 at 3-14), the plaintiff was injured when the vehicle he was driving was struck head-on, in his own lane of travel, by a vehicle driven by non-party Stephen Holley, who died in the collision. The insurer of the latter vehicle denied coverage on the grounds Holley was driving it without permission of the insured. The plaintiff then sought uninsured motorist ("UM") benefits from two carriers. The primary carrier paid policy limits of $100,000, but the defendant offered less than $7,000. The six-count complaint asserts claims for negligence; wantonness; breach of contract; normal bad faith; abnormal bad faith; and fraud.

The defendant initially sought dismissal of all six claims. In its reply brief, however, it "concede[s]" its motion as to the negligence and wantonness claims.

(Doc. 10 at 1). The defendant asserts that the remaining four claims are "not ripe and do not present a justiciable controversy." (Doc. 2 at 4).

**DISCUSSION**

Uninsured motorist coverage is required by Alabama statute. With exceptions and qualifications not pertinent herein, an automobile policy must include coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Ala. Code § 32-7-23(a). The parties do not quote the policy language, but the plaintiff acknowledges that the defendant's contractual obligation to pay extends no further than the "legally entitled" statutory standard. (Doc. 9 at 4).

An insured may bring an action to recover uninsured motorist benefits at any time and establish therein the fact and extent of the insurer's liability. This is the purpose of the plaintiff's claims for negligence and wantonness (of Holley), and it is why the defendant has conceded that those claims may proceed. (Doc. 9 at 5-6; Doc. 10 at 1).

A claim for breach of contract, on the other hand, presupposes that the insurer has already violated a contractual duty to pay uninsured motorist benefits. Alabama law holds that such a claim is premature before the fact and extent of the insurer's payment obligation has been satisfactorily established. The defendant argues that this critical point has not been reached.

"The term 'legally entitled to recover as damages' has been interpreted to mean … that the insured *must be able to establish fault* on the part of the uninsured motorist, which gives rise to damages, *and must be able to prove the extent of those damages*." *Quick v. State Farm Mutual Automobile Insurance Co.*, 429 So. 2d 1033, 1035 (Ala. 1983) (emphasis in original, internal quotes omitted).[1] "Thus, there can be no breach of an uninsured motorist contract … until the insured proves that he is legally entitled to recover," which cannot occur

---

[1] The plaintiff concedes the accuracy of this proposition. (Doc. 9 at 4).

2

when "the amount of damages ha[s] not been determined." *Id*. "Without a determination of whether liability exists on the part of the underinsured motorist and the extent of the plaintiff's damages, a claim of … breach of contract is premature" and "not ripe for adjudication." *Pontius v. State Farm Mutual Automobile Insurance Co.*, 915 So. 2d 557, 564 (2005).

"The question arises: when is a carrier of uninsured motorist coverage under a duty to pay its insured's damages?" *LeFevre v. Westberry*, 590 So.2d 154, 159 (Ala. 1991). Under *Quick* and *Pontius*, there must first be a "determination," based on "proof" (or, presumably, the insurer's agreement or acquiescence), that the uninsured motorist was at fault; that the insured suffered damages as a result; and that the amount of those damages is a particular amount (or, presumably, that it exceeds policy limits).

The plaintiff presented the defendant with a demand letter, accident report, supplemental crash reconstruction report, medical records, medical bills and lost wage documentation. (Doc. 9 at 2; Docs. 1-2, 9-1, 9-2). The plaintiff asserts that Holley's conduct, combined with the plaintiff's documented medical bills and lost wages, his "painful injuries" and his emotional distress, support a "reasonabl[e] infer[ence]" that his "claimed damages … are established damages." (Doc. 9 at 10-11).

The Court assumes without deciding that *Quick* and *Pontius* can be satisfied by evidentiary presentations to the insurer. The Court also assumes without deciding that the plaintiff's presentation satisfactorily determined that Holley was at fault and that he acted wantonly. The question remains whether this presentation satisfactorily determined the extent of the plaintiff's resulting damages. Plainly, it did not.

As noted, the plaintiff's primary insurer paid uninsured motorist policy limits of $100,000. (Doc. 1-1 at 6). The plaintiff then demanded from the defendant its policy limits of $200,000. (Doc. 1-2 at 2, 4). The plaintiff capped his special damages (medicals and lost wages) at $36,239.71, (*id*. at 3), meaning

3

that the primary insurer had covered all of the plaintiff's specials and also $63,760.29 in general damages. The plaintiff thus demanded of the insurer an additional $200,000 for pain and suffering, mental anguish and punitive damages. To support an award for pain and suffering, the plaintiff pointed to a torn PCL, a partially torn ACL, and two meniscus tears, with resulting pain sufficient to keep him out of work for fifteen weeks. To support an award for mental anguish, the plaintiff pointed to anxiety and flashbacks from the collision and from Holley's death (of which he is reminded every day he engages in his occupation as a commercial driver), resulting in several months of grief therapy. To support an award of punitive damages, the plaintiff noted that Holley "began passing cars in heavy traffic, driving recklessly" and "then drifted into the southbound lane and struck" the plaintiff. (*Id*. at 2-4).

The Court assumes without deciding that the plaintiff's presentation satisfactorily established that the plaintiff was legally entitled to some award of general damages beyond the $63,760.29 he received from the primary insurer. That, however, is not enough: "Clearly, the insured … was entitled to some payment under the uninsured motorist coverage of the State Farm policy, but the total amount of that entitlement was not capable of being fully ascertained …. In other words, [the insured] had failed to prove the extent of those damages in order to become legally entitled to collect damages from the owner or driver of the uninsured motor vehicle." *LeFevre*, 590 So. 2d at 157 (internal quotes omitted).

The plaintiff articulates no principled means of concluding that his descriptions of pain and suffering, mental anguish and wanton conduct prove that these elements of his damages exceed $260,000. Nor, unlike the Alabama Supreme Court, does the plaintiff acknowledge the difficulty of satisfying *Quick* and *Pontius* by relying on general damages: "With only punitive damages recoverable in wrongful death cases …, it is doubtful that an insured could ever prove the amount of an insurer's liability under uninsured motorist coverage in a wrongful death case with the specificity necessary to recover against an insurer for

bad faith in failing to negotiate or pay a wrongful death claim under uninsured motorist coverage." *Aetna Casualty and Surety Co. v. Beggs*, 525 So. 2d 1350, 1352-53 (Ala. 1988). This is not a wrongful death case, but the unpredictability of punitive damage awards extends to personal injury actions. Finally, the plaintiff in his demand letter stressed that 75-80% of the value of his claim rests on the defendant's status as an insurer (with which a jury would be less sympathetic than an individual), (Doc. 1-2 at 4), thereby conceding the wild unpredictability of his damages.

The plaintiff objects that the defendant characterized its motion as one to dismiss for failure to state a claim, (Doc. 2 at 1), and he argues that only the complaint can be considered on such a motion, the allegations of which must be accepted as true. (Doc. 9 at 11). The complaint, he continues, adequately establishes his damages for purposes of *Quick* and *Pontius*. (*Id.*). His construction of the complaint is doubtful, but it is unavailing in any event.

Although the defendant called its motion one to dismiss for failure to state a claim, it argued that the plaintiff's claims "are not ripe and do not present a justiciable controversy." (Doc. 2 at 4). The same occurred in *Pontius*, causing the Alabama Supreme Court to construe the defendant's motion as one to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), because "[r]ipeness implicates subject-matter jurisdiction." 915 So. 2d at 562-63. The plaintiff offers no explanation why the Court should not do likewise.[2]

"[C]ontractual liability is a prerequisite for liability for bad faith." *Acceptance Insurance Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001). The same rule applies to both normal and abnormal claims of bad faith. *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999) ("[W]e make clear that in

---

[2] *See Butler v. Morgan*, 562 Fed. Appx. 832, 836 (11th Cir. 2014) (recognizing that the trial court could construe Rule 12(b)(6) motions as Rule 12(b)(1) motions); *Perez v. Muab, Inc.*, 2011 WL 845818 at *1 (S.D. Fla. 2011) (construing a motion "as one made under [Rule] 12(b)(6), though it could be construed as being filed under [Rule] 12(b)(1)").

order to recover under a theory of an abnormal case of bad-faith failure to investigate an insurance claim, the insured must show … that the insurer breached the contract for insurance coverage with the insured ….").  Therefore, because the plaintiff's contract claim is unripe, his bad faith claims likewise are unripe. *Pontius*, 915 So. 2d at 563 ("This Court has held that 'there can be no breach of an uninsured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover.'") (quoting *Quick*, 429 So. 2d at 1035).

In a brief four lines, the defendant proposes that the plaintiff's fraud claim be captured by the same rule, on the grounds that it "arises from contract." (Doc. 2 at 3).  The complaint alleges that the defendant fraudulently misrepresented to the plaintiff that it would reasonably evaluate his claim and provide coverage for the claim, even though it never intended to do so.  As noted above, bad faith claims are unripe when the contract claim is unripe because a breach of contract is an element of the bad faith claim.  The defendant, however, has not shown that a breach of contract is likewise an element of the plaintiff's fraud claim.  Nor has the defendant cited any authority in support of its position.[3]

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **granted** with respect to the plaintiff's claims for breach of contract, normal bad faith and bad faith and is otherwise **denied**.  The plaintiff's claims for breach of contract, normal bad faith and abnormal bad faith are **dismissed without prejudice**.

DONE and ORDERED this 9th day of May, 2017.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE

---

[3] The only fraud case the defendant cites stands only for the proposition that an unripe fraud claim should be dismissed without prejudice rather than with prejudice.